## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| CORINE PITZER, *Administrator of the Estate of Brian Pitzer, Deceased,*     )<br>  )<br>Plaintiff,     )<br>  )<br>v.     )<br>  )<br>CITY OF EAST PEORIA, ILLINOIS, et al.,     )<br>  )<br>Defendants.     ) | Case No.   08-cv-1120 |

## O R D E R   &   O P I N I O N

This matter is before the Court on Defendants' Motions to Dismiss.[1] (Docs. 55, 60, 61, 58).  Plaintiff has responded in opposition to each of the Motions to Dismiss.  (Docs. 64, 65, 66, 67).  For the reasons stated below, the East Peoria Defendants' and the Peoria County Defendants' Motions to Dismiss are denied, and the Tazewell County Defendants' and the Pekin Defendants' Motions to Dismiss are granted.

### LEGAL STANDARD

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. Dec. 21, 2009) (*citing Tamayo v.*

---

[1]   There are four groups of defendants in this case: the City of East Peoria, Illinois, and Chad LaCost, an East Peoria police officer ("East Peoria Defendants"); Peoria County, Illinois, and James Pearson, a lieutenant of the Peoria County Sherriff's Department ("Peoria County Defendants"); Tazewell County, Illinois and Todd Mutchler and Chris McKinney, Tazewell County Sherriff's Deputies ("Tazewell County Defendants"); and the City of Pekin, Illinois, and Jeffrey Stolz ("Pekin Defendants").

*Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008)). To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007)). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 547. "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (*quoting Twombly*, 550 U.S. at 557; *Tamayo*, 526 F.3d at 1084). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

The Court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading under Federal Rule of Civil Procedure 12(f).

## BACKGROUND[2]

This matter arises from an incident on May 24, 2007, in which Brian Pitzer, Plaintiff's decedent, was killed. On that date, Pitzer was at his home in Creve Coeur, Illinois. He suffered from severe depression and was on anti-depression medication. Plaintiff, Pitzer's wife, found Plaintiff at home the afternoon of May 24, 2007, intoxicated and holding a shotgun, which he refused to relinquish. Plaintiff had to leave to attend to their daughter, but contacted an East Peoria auxiliary

---

[2] The background facts given here are drawn from Plaintiff's Second Amended Complaint, since the Court must, as discussed above, treat all well-pleaded allegations in it as true on a Motion to Dismiss.

2

police officer, Jeff Hall, for assistance with Pitzer. Members of the Creve Coeur police department arrived at the Pitzer home and attempted to get Pitzer to come outside without his gun.

Following Pitzer's refusal to put down the gun and come out, the Creve Coeur police called the Central Illinois Emergency Response Team ("CIERT"), which is made up of officers from several local governmental entities in the Peoria, Illinois area, including Chad LaCost, James Pearson, Jeffrey Stolz, Todd Mutchler, and Chris McKinney. The CIERT team joined the Creve Coeur police officers at the Pitzer home, where they placed an armored vehicle in the street to block access to the residence, and instructed neighbors to stay indoors.

Pitzer remained in his home for the next five hours, during which he left the house on one or two occasions, carrying his shotgun over his arm; Pitzer informed the police that he intended to commit "suicide by police." The officers surrounded the house, and attempted to convince Pitzer to come out unarmed. Pitzer spoke with his father at some point, and told him that he would give the gun to his father. Pitzer's parents, who lived a three-hour drive away in Missouri, therefore began to drive to Creve Coeur to assist the police in disarming Pitzer. Pitzer's father told the police that Pitzer had stated he would relinquish the gun to his father and that he was on his way to the area.

At the time when Pitzer's parents were in Pekin, Illinois, a short distance from Pitzer's residence, Pitzer came out of his home with his shotgun pointed upward. Pearson directed Stolz, Mutchler, and McKinney to enter the Pitzer home, and directed Stolz and another group to set up the SL 6 Multi-Launcher, a "less

3

lethal" force option, and to release a police dog after using the Launcher. Pitzer's pet dog left the house after Pitzer while the officers were entering it. Stolz released the police dog, which, instead of biting Pitzer as commanded, bit Pitzer's dog. At that point, officers shot Pitzer with a taser, causing him to drop the shotgun. While Pitzer was unarmed, LaCost shot Pitzer in the back, fatally wounding him. Pitzer died on May 25, 2007.

Plaintiff's Second Amended Complaint alleges, pursuant to 42 U.S.C. § 1983, violations of the Fourth Amendments by each of the officers. (Doc. 49 at 10-12). In addition, Plaintiff alleges a common law claim for battery under Illinois law against LaCost. (Doc. 49 at 12). Plaintiff also alleges, under the Illinois Local Governmental Tort Immunity Act, that East Peoria, Peoria County, Pekin, and Tazewell County are each "responsible for the payment of any settlement or judgment of the federal civil rights claim" against their respective officers, and that East Peoria is also liable under the Act for the "payment of any settlement or judgment of the…common law battery claim against" LaCost. (Doc. 49 at 12-13).

**DISCUSSION**

**I. East Peoria and Peoria County Defendants' Motions to Dismiss or Strike**

The East Peoria Defendants argue that the damages alleged by Plaintiff in paragraph 38 of the Second Amended Complaint are not recoverable under § 1983, and argue that the paragraph be stricken or that the Complaint be dismissed.[3]

---

[3] Paragraph 38:

> Brian Pitzer left surviving his spouse, Corine Pitzer, and his two minor children, Shanen Pitzer and Kylie Pitzer, who suffered the grief of the

4

(Doc. 55). The Peoria County Defendants join in this Motion.[4] (Doc. 60). These Defendants argue that Plaintiff cannot recover Wrongful Death Act-type damages under § 1983, but that Plaintiff, as administrator of Pitzer's estate, can recover only damages that Pitzer would have been able to recover (survival damages).

Section 1983 does not address the types of damages available to the estate when an individual is killed by unconstitutional state action; instead, a federal court may look to state law under 42 U.S.C. § 1988, so long as it is not inconsistent with § 1983's policies, to determine whether the appropriate measure of damages. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). Illinois provides two potentially analogous measures of damages: the Wrongful Death Act and the Survival Act. The Wrongful Death Act allows the decedent's estate to recover "pecuniary" damages for injuries incurred by a surviving spouse and next of kin. 740 ILCS 180/1 et seq. The Survival Act allows the decedent's estate to continue a decedent's own cause of action to recover for conscious pain and suffering, as well as medical expenses incurred before death. 755 ILCS 5/27-6 et seq. Defendants argue

---

loss of their husband and father, the loss of his society and companionship, and the loss of his support from his annual income as a tug boat captain of $57,000 for the remaining 33 years of his work life from 32 years of age until 65, a total of $1,881,000 the discount rate from monies earned on that sum offset by the decline in purchasing power of the monies as they would be earned during that 33 years. The derivative claims for Brian Pitzer's wife and children for their loss of Brian Pitzer's loss of society, companionship, and support are limited to the federal civil rights claims against the defendants including Officer LaCost and do not include damages from the common law battery to Brian Pitzer by Officer LaCost which were stricken from the original complaint by the February 11, 2009 Order of court.

[4]  The Tazewell County Defendants also join in this motion, but, as discussed below, their Motion to Dismiss will be granted on other grounds. (Doc. 62 at 9).

5

that *Russ v. Watts* precludes recovery by Plaintiff of the Wrongful Death Act-type damages alleged in paragraph 38. 414 F.3d 783 (7th Cir. 2005). In *Russ*, the parents of the adult decedent sued on their own behalf, and the Seventh Circuit held that the parents, individually, had no standing to assert a § 1983 claim on their own behalf.[5] *Id.* at 790-91. The parents had claimed a "due process right to associate with" the decedent, but the court found that there was no "constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action." *Id.* at 785, 791. In this case, though, as noted above, Plaintiff is suing as administrator of Pitzer's estate; she does not assert a constitutional right to associate with Pitzer on her own behalf, but rather Pitzer's own right against violations of the Fourth Amendment.

The Seventh Circuit has addressed the interplay of the Illinois Wrongful Death and Survival Acts with § 1983 where the estate administrator is the plaintiff. In *Spence v. Staras*, the Seventh Circuit held that the estate administrator of a man whose death had allegedly been caused by unconstitutional state action was eligible to recover pecuniary losses under the Wrongful Death Act for the decedent's next of kin,[6] damages resulting from the decedent's pain and suffering prior to death, and punitive damages. 507 F.2d 554, 558 (7th Cir. 1974). In *Bass*, the Seventh Circuit, noting that Illinois law would otherwise preclude recovery by the estate for loss of life itself, held that this limitation would conflict with the deterrent policy of § 1983,

---

[5] Neither of the parents was the administrator of the estate; the decedent's child's mother was named as administrator and pursued a separate action in that capacity. *Russ*, 414 F.3d at 784-85.

[6] "Pecuniary losses" include "loss of money, benefits, goods, services, society and sexual relations." ILL. PATTERN JURY INSTR.-CIV. 31.04 (2009 ed.).

6

and permitted recovery by the estate for "loss of life," in addition to "conscious pain and suffering experienced by the decedent prior to death, and punitive damages" in appropriate cases. *Bass*, 769 F.2d at 1190.

This issue was decided in this case by the Court on February 11, 2009. (Doc. 17 at 13). In ruling on the East Peoria Defendants' Motion to Dismiss or Strike the damages allegations of Plaintiff's first Amended Complaint, the Court held that it

> would not conflict with federal law to incorporate the damages and survivorship provisions of the Illinois Wrongful Death Act into the instant section 1983 claim, and thereby, potentially allow Brian Pitzer's estate to recover for the loss of consortium, society, and companionship by his wife and minor children as the result of his death.

(Doc. 17 at 13). The damages paragraph addressed by the Court in that Opinion made the same claims relative to decedent's widow and children as does paragraph 38 of the Second Amended Complaint. (Doc. 1 at 7-8; Doc. 49 at 14). In this case, the Court has already determined that damages for "loss of life" that are recoverable by the estate under § 1983 include the types of pecuniary damages listed in the Wrongful Death Act. The Court has considered and rejected the argument the *Russ* forecloses Wrongful Death Act-type damages for Plaintiff as administrator of Pitzer's estate.[7] (Doc. 17 at 9-10).

The law of the case doctrine thus precludes relitigation of this issue, especially as Defendants have not asked for reconsideration of the February 11, 2009 decision, and have not provided any compelling reason for reconsideration.

---

[7]  Similarly, in *Thomas ex rel. Smith v. Cook County Sheriff*, the Northern District of Illinois held that *Russ* did not foreclose the ability of the estate administrator to recover for Wrongful Death Act-type damages that would benefit the decedent's spouse and children. 401 F.Supp.2d 867, 872 (N.D. Ill. 2005).

7

"[T]he law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007) (*citing Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 572 (7th Cir. 2006); *Starcon Int'l, Inc. v. N.L.R.B.*, 450 F.3d 276, 278 (7th Cir. 2006); *Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997)). The Court has reviewed the February 11, 2009 Opinion, as well as the relevant caselaw, and finds no indication that the determination that Plaintiff, as administrator, may recover the type of damages alleged in paragraph 38 of the Second Amended Complaint was erroneous.[8] Defendants rely primarily on *Russ* and on other cases holding that family members have no standing to bring individual actions under § 1983 for the deaths of their relatives, which are not applicable to this case.[9] These cases do not

---

[8] The Court notes that Magistrate Judge Bernthal of the Central District of Illinois has agreed with its analysis in the February 11, 2009 Opinion, and allowed a plaintiff to maintain a loss of consortium claim in a § 1983 action; his Report & Recommendation to this effect was adopted over objections by Chief Judge McCuskey. *Hahn v. Walsh*, 09-cv-2145, 2009 WL 5215599, *12, 15-16 (C.D. Ill. Dec. 29, 2009).

[9] *Thompson v. City of Chicago*, 472 F.3d 444, 452 fn. 25 (7th Cir. 2006) (court refused to reinstate individual claims, while implicitly recognizing that administrator had standing to bring § 1983 claim); *Claybrook v. Birchwell*, 199 F.3d 350, (6th Cir. 2000) (*citing Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir.1984)) (noting that only estate administrators have standing to make § 1983 claim for decedent's death and that in the Sixth Circuit "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members"); *Broadnax v. Webb*, 892 F.Supp. 188, 189 (E.D. Mich. 1995) (*citing Jaco*, 739 F.2d 239) (children of injured parent could not assert their own loss of companionship claim under § 1983); *Quitmeyer v. Southeastern Pennsylvania Transp. Authority*, 740 F.Supp. 363, 370 (E.D. Pa. 1990) (dismissing widow's individual loss of consortium claim under § 1983).

compel the Court to reconsider its earlier ruling, since Plaintiff sues as administrator; she does not assert her own individual cause of action. The law of this case establishes that the estate is eligible to recover for decedent's "loss of life" by collecting pecuniary damages analogous to those listed in the Wrongful Death Act.

As the issue presented by the East Peoria and Peoria County Defendants in their Motions to Dismiss has already been decided by the Court in Plaintiff's favor, the Motions to Dismiss are denied. The Court notes that the Peoria County

---

Though Defendants have not explicitly asked for reconsideration, they argue that the Court should consider the Illinois Survival Act a better model than the Wrongful Death Act and preclude Wrongful Death Act-type pecuniary damages. (Doc. 56 at 6). In support of this contention, they cite to *Jaco v. Bloechle*. (Doc. 56 at 6-7). In *Jaco*, the Sixth Circuit considered "the interrelationship between the federal civil rights statute, 42 U.S.C. § 1983, and Ohio's survival and wrongful death statutes." *Jaco*, 739 F.2d at 241. Because the decedent's death was instantaneous, no cause of action on his own behalf accrued under Ohio's survival statute. *Id.* at 242. Likewise, the Sixth Circuit held that there could be no recovery by the estate for wrongful death under Ohio law, as that claim belonged to the survivors, not to the decedent, and § 1983 provides a claim personal to the decedent. *Id.* The court noted that if the decedent had survived for a few moments, his estate would have been able to maintain a survival cause of action; "to suggest that the Congress had intended that a civil rights infringement be cognizable only when the victim encounters pain and suffering before his demise, is absurd." *Id.* at 244. The Sixth Circuit then concluded that, in order to "afford effect to the expressions and directions of the Supreme Court in *Robertson v. Wegmann*, where, as here, the survival statutes of the forum state are hostile to promoting deterrence, protection and vindication against § 1983 civil rights infringements perpetrated under color of law, the federal court must implement the congressional intent by allowing survival." *Id.* at 245. The *Jaco* court thus allowed the personal representative to maintain her decedent's survival claim under § 1983.
  Where the Seventh Circuit, whose precedents control this Court's decision, has already evaluated a similar question under Illinois law in *Spence* and *Bass*, this Court must comply with its direction that an estate administrator can recover Illinois Wrongful Death Act-type pecuniary damages, including those for losses suffered by the spouse and children of the decedent; a Sixth Circuit decision addressing Ohio law does not override these decisions.

Defendants made no independent arguments in their Motion to Dismiss challenging the existence of a plausible claim having been pled against them. Therefore, denial of the Peoria County Defendants' instant Motion to Dismiss does not address that issue, which remains open and undecided.

## II.  Tazewell County Defendants' Motion to Dismiss

Tazewell County, Mutchler, and McKinney argue that Plaintiff has failed to allege facts showing that the deputies engaged in an unreasonable search or seizure, and that the deputies' actions did not cause the shooting of Pitzer or any other compensable injury.[10]  (Doc. 62 at 4-9).  In order to state a claim for damages under § 1983, a plaintiff must allege "(1) a deprivation of a right secured by the constitution or laws of the United States (2) caused by an action taken under color of state law."  *Hernandez v. City of Goshen, Indiana*, 324 F.3d 535, 537 (7th Cir. 2003 (*citing Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

Plaintiff alleges that, once Pitzer walked out of his home for the last time, the deputies entered the Pitzer home.  She alleges that this was an unconstitutional search of the home.  (Doc. 49 at 11).  Further, Plaintiff alleges that, following Stolz's tasering of Pitzer, the deputies' failure to inform their fellow officers that Pitzer was disarmed was "immediately connected to Officer LaCost's shooting of Pitzer and deprived Pitzer of his right to bodily integrity in violation of the Fourth Amendment." (Doc. 49 at 11).  Even assuming, as the Court must, that Plaintiff's

---

[10]  In addition, as noted above, the Tazewell County Defendants join in the Motion to Dismiss filed by the East Peoria Defendants.  (Doc. 62 at 9).

10

factual allegations are true, Plaintiff has filed to plausibly allege that Mutchler's or McKinney's actions *caused* any injury to Pitzer.

The only injury alleged by Plaintiff is Pitzer's death. Therefore, she must allege that each of the purported constitutional violations have contributed to his death, which she has not done. There is absolutely no connection between the "search" of Pitzer's home and LaCost's shooting of Pitzer. Whether or not the decision to enter the home was wise, or in accordance with best practices, or even a Fourth Amendment violation, there is no plausible indication that the deputies' entry of the home caused LaCost to shoot Pitzer, or increased the likelihood that he would shoot him.[11]

Likewise, there is no plausible allegation that the deputies' failure to inform their fellow officers that Pitzer had been disarmed caused the shooting - indeed, Plaintiff's Complaint establishes that LaCost already had that information when he shot Pitzer. (Doc. 49 at 9). Plaintiff does not explain how the deputies' additional statement of this known fact would have prevented LaCost's shooting of Pitzer. Plaintiff instead chooses to argue that Mutchler and McKinney somehow escalated the situation such that LaCost was more likely to shoot Pitzer, citing to *Estate of Starks v. Enyart*, 5 F.3d 230, 233-34 (7th Cir. 1993), and *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 840 (10th Cir. 1997). (Doc. 65 at 15-16). In *Starks*, the defendant police officer had stepped in front of a fleeing suspect's moving car without giving the suspect time to stop the car - the officer and others then shot the

---

[11] Indeed, Plaintiff appears to waive any claim for injury from the "search" itself by not mentioning it at all in either of her Responses to the Tazewell County Defendants' and Pekin Defendants' Motions to Dismiss.

11

suspect in order to protect himself. *Starks*, 5 F.3d at 233-34. The Court of Appeals held that it was unreasonable for the officer to step in front of the moving car, and therefore that action could not "support a reasonable officer's belief that it was permissible to use deadly force to seize" the suspect. *Id*. at 234. In *Allen*, another excessive force case, summary judgment was overturned where a genuine issue of material fact existed as to whether an officer had run, screaming, to the car door of an armed suicidal man. *Allen*, 119 F.3d at 840. The man then aimed his gun at the officers, who shot him. *Id*. The lower court found that the decision to shoot the man was reasonable, as he threatened the officers, but the appellate court found that the reasonableness of their conduct had to be evaluated in light of the officer's previous conduct possibly triggering the threat where it was "'immediately connected' to the suspect's threat of force." *Id*.

This case is not like *Starks* and *Allen*, where the officers, at least in part, may have created or exacerbated the threat posed by the individual who was killed by police. In both *Starks* and *Allen*, the officers were alleged to have engaged in conduct that created an increased risk that the suspect would threaten an officer's life such that deadly force would be used against him. Here, Plaintiff's allegations show that Mutchler and McKinney did nothing that triggered Pitzer to increase the threat he posed to the officers; indeed, Plaintiff alleges that Pitzer posed no threat to the officers. According to Plaintiff's own allegations, all of the relevant officers knew that Pitzer had been disarmed when LaCost shot him. Mutchler's and McKinney's conduct in failing to notify LaCost of that fact did not create or escalate any threat posed by Pitzer such that LaCost was more likely to shoot him, as

LaCost already knew that Pitzer was disarmed. In addition, their entering the house while Pitzer was outside has no plausible causal connection to the shooting under this argument, as nothing about their entry increased the level of threat posed by Pitzer or the chances of Pitzer's being shot by an officer outside.[12]

Plaintiff has failed to allege sufficient facts to raise her claims against the Tazewell County Defendants above the speculative level, as she has not alleged any conduct by Mutchler or McKinney that allows the Court to draw the reasonable inference that they are liable for the injury suffered by Pitzer. Therefore, the Tazewell County Defendants' Motion to Dismiss is granted.

### III. Pekin Defendants' Motion to Dismiss

The City of Pekin and Stolz argue that Plaintiff has failed to allege that Stolz engaged in any action making him personally responsible for the shooting, and that his actions were reasonable.[13] (Doc. 59 at 4-5).[14] As she did in response to the

---

[12] Plaintiff appears to contend that their entry was *per se* unreasonable, which therefore should support a finding that it was a causal factor in the shooting. (Doc. 65 at 15 ("Mutchler and McKinney knew they put themselves in the house of the armed suicidal Pitzer and that members of the CIERT team were armed and ready to used deadly force.")). Whether their conduct could have created a problem in a different set of circumstances is not at issue in this case, however; the issue is whether they causally contributed to the actual injury suffered.

[13] Though neither Plaintiff nor the Pekin Defendants mention Plaintiff's apparent Fourth Amendment unlawful search claim, the Court finds that it fails under Rule 12(b)(6) against the Pekin Defendants for the same reasons that it failed against the Tazewell County Defendants.

[14] Because Plaintiff filed her Second Amended Complaint following the filing of the Pekin Defendants' Motion to Dismiss (Doc. 39), the Motion to Dismiss was deemed to be moot under Local Rule 7.1(E). (Doc. 54). The Pekin Defendants revived the earlier Motion to Dismiss in their November 4, 2009 Motion to Dismiss. (Doc. 58). As the later Motion restates the arguments made in the November 4

Tazewell County Defendants' Motion to Dismiss, Plaintiff cites to *Starks* and *Allen* in arguing that Stolz created or escalated the danger of the situation such that deadly force was used against Pitzer. Again, however, Plaintiff has failed to allege sufficient facts to render such a claim plausible.

The only conduct by Stolz that Plaintiff alleges is that he entered the Pitzer home with Mutchler and McKinney while Pitzer was outside, that he released his K-9 dog (which bit Pitzer's pet dog), that he tasered Pitzer, disarming him, and that he failed to inform the other officers that Pitzer had been disarmed.[15] As discussed above, Plaintiff has alleged nothing about the entry of the officers into Pitzer's home that contributed to Pitzer's death. Further, Plaintiff does not allege or argue that the release of the K-9 dog or the tasering of Pitzer contributed to LaCost's decision to shoot Pitzer - indeed, Plaintiff points out that the tasering disarmed Pitzer.[16]

Therefore, as with Mutchler and McKinney, Plaintiff's allegations against Stolz turn on his failure to inform the other officers that Pitzer had been disarmed. As discussed above, such conduct cannot be a cause of Pitzer's injury where Plaintiff admits that LaCost already knew that Pitzer had been disarmed when he shot him. Plaintiff does not allege any conduct by Stolz that escalated the danger posed by

---

Motion, the Court will cite to the November 4, 2009 Motion to Dismiss and its accompanying Memorandum.

[15]  Plaintiff also alleges that the officers "knew" certain facts that rendered the decision to enter the house reckless. (Doc. 67 at 2-3). As discussed above, the mere entry of the house, though it may have been a poor decision, has no alleged or imaginable causal relation to the injury actually suffered by Pitzer. Where there is no injury allegedly resulting from particular (even unreasonable or wrongful) conduct, there can be no actionable § 1983 claim as to that conduct.

[16]  Plaintiff does not contend that the tasering of Pitzer by Stolz was a violation of Pitzer's constitutional rights.

14

Pitzer to the officers such that the likelihood that deadly force would be used increased, as in *Starks* and *Allen*. In addition, Plaintiff does not allege that Stolz directly caused LaCost to shoot Pitzer. Plaintiff has failed to allege any conduct by Stolz that could plausibly have caused or contributed to LaCost's shooting of Pitzer.

Plaintiff notes that in most Fourth Amendment excessive force claims, a defendant's motion to dismiss is denied. (Doc. 67 at 6). This is true, because most excessive force claims are made against the officer who actually inflicted the force or ordered the force to be used, and the courts have determined that the necessary reasonableness inquiry cannot usually be conducted at the motion to dismiss stage. *See Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 476 (7th Cir. 1997) ("Determining whether [the officers] actions were reasonable, in light of the totality of the circumstances, is a task the district court should perform with the benefit of statements from the witnesses."). Here, the Court's analysis does not turn on whether the officers' conduct was reasonable, but on whether it has any plausible connection, under the facts alleged by Plaintiff, to the injury suffered by Pitzer. This inquiry does not require evidence or witness statements in this case, as Plaintiff has failed to make any allegations allowing the Court to draw the inference that Stolz (or Mutchler or McKinney) engaged in any conduct that contributed to Pitzer's injury.

Plaintiff, though focusing almost exclusively on the claim that Stolz actually caused the shooting of Pitzer, briefly mentions "failure to intervene" in her brief.[17]

---

[17] Though Plaintiff only mentions "failure to intervene" in her Response to the Pekin Defendants' Motion to Dismiss, the following analysis is equally applicable to the Tazewell County Defendants.

15

(Doc. 67 at 4). In order to make a "failure to intervene" claim under § 1983 against an officer who was present when his constitutional rights were being violated by a fellow officer, a plaintiff must show that the officer had reason to know that excessive force was being used, and that the "officer had a realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (*quoting Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Here, Plaintiff has alleged that LaCost fired only one shot, which hit and fatally wounded Pitzer with two bullets. (Doc. 49 at 9). She has not alleged that any of the other officers knew in advance that LaCost intended to shoot Pitzer. Therefore, the Court cannot find that Stolz "had reason to know," until it had already happened, that allegedly excessive force would be used against Pitzer by LaCost. *See Lanigan*, 110 F.3d at 478 ("we do not find the contact [a 'poke and push'] between Sergeant Krane and Lanigan to be so prolonged that Chief Robertson could know or be deliberately indifferent to Sergeant Krane's actions. Chief Robertson could not have undertaken any action to 'un-do' any alleged constitutional violation by Sergeant Krane").

In addition, as a matter of law there was no realistic opportunity to intervene to prevent the shooting. There is a realistic opportunity to intervene if an officer could have "called for a backup, called for help, or at least cautioned [the other officer] to stop" using excessive force. *Abdullahi*, 423 F.3d at 774 (7th Cir. 2005) (*quoting Yang*, 37 F.3d at 285). Though the Seventh Circuit has noted that this inquiry typically presents a jury question, it can be decided by the Court where "a reasonable jury could not possibly conclude otherwise." *Id*. (*quoting Lanigan*, 110

16

F.3d at 478 (emphasis added by *Abdullahi* court)).  The Court finds that this case presents timing circumstances similar to those of *Lanigan*, where Seventh Circuit held that the plaintiff had failed to state a claim for failure to intervene because the onlooking officer "did not have a realistic opportunity to intervene in any situation between Lanigan and Sergeant Krane," where the alleged excessive force was a single, quick, "poke and push."  Though the onlooking officer could have acted to stop further violence, none was alleged, and so the plaintiff had failed to state a claim for failure to intervene.  Likewise, a single gunshot is nearly instantaneous, even faster than a "poke and push" - Stolz might have intervened if LaCost had continued to use force against Pitzer, but there was nothing he could do to prevent the single shot where it is not alleged that he knew LaCost was going to shoot the disarmed Pitzer.

Plaintiff has failed to allege sufficient facts to raise her claim that Stolz's actions contributed to Pitzer's injury to the level of plausibility, and, as a matter of law, cannot make out a claim that Stolz unconstitutionally failed to intervene to prevent Pitzer's injury.  Therefore, the Pekin Defendants' Motion to Dismiss is granted.

## Conclusion

For the foregoing reasons, the East Peoria Defendants' and the Peoria County Defendants' Motions to Dismiss (Docs. 55 & 60) are DENIED, and the Tazewell County Defendants' and the Pekin Defendants' Motions to Dismiss (Docs. 61 & 58) are GRANTED.

IT IS SO ORDERED.

Entered this <u>20th</u> day of April, 2010.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
